UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:					}
					}
QUALITY PROPERTIES, LLC		} Case No. 10-42783-JJR-11
					}
		Debtor.		}

## MEMORANDUM OPINION

In this matter the Court must decide whether rejection pursuant to 11 U.S.C. § 365(a) by a chapter 11 debtor in another case, of its residual obligations under a lease that had been assigned to the debtor in this case, resulted in the termination of the assigned leasehold estate thereby leaving nothing for the debtor in this case to assume.[1] The Court concludes that because the leasehold estate had been assigned before its purported rejection, only the assignor/debtor's residual obligations as former lessee were rejected, and the assigned leasehold estate was left untouched by the rejection and may be assumed by the debtor in this case.

I. Introduction and Parties

The chapter 11 debtor in this case, Quality Properties, LLC ("Quality"), filed a Motion to Assume Lease and Related Assignments and Obligations, etc. (Doc. 44, and herein, the "Lease Motion"), with respect to a Lease Agreement dated February 5, 1979 (the "Lease") and the assignments under which Quality claims to have succeeded to the lessee's interest under the Lease. Quality also filed related Motions to Assume three subleases (the "Subleases") under which it claims to be the sublessors (Docs 42, 48, 49 and herein the "Sublease Motions" and together with the Lease

---

[1] 11 U.S.C. § 365(a) reads:
Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Motion, the "Motions"). The Motions were filed pursuant to Section 365(a) of the Bankruptcy Code and Rule 6006(a) of the Federal Rules of Bankruptcy Procedure.[2] In response to the Motions, John Hilsman Investments, LLC, Denny Family Properties, LLC, Mike McCollum, and Tracy Honea (collectively, the "Landlords") filed their Lessors' Opposition to Debtor's Motions to Assume (Doc. 83 and herein, the "Opposition"), in which they stated they were the successors to the lessor's interest under the Lease, and as such objected to the assumptions of the Lease and Subleases as proposed by Quality.[3] The Landlords also filed a Motion For Relief From Stay (Doc. 84 and herein, the "Stay Relief Motion"), the essence of which is discussed below.

## II. Findings of Fact

The Lease was originally made by W. C. and Chloris A. Portwood as lessors ("Original Lessors"), and Bruno's, Inc. as lessee ("Original Lessee"), and covered an unimproved tract of real property located in Marshall County, Alabama on which the Original Lessee later constructed a retail shopping center (the "Leased Premises"). The term of the Lease was for fifty years, and provided for an annual rental of $15,000. (Lease ¶s 1, 2). The Lease is what is commonly referred to as a "ground lease" and granted the lessee a virtually unfettered right to construct a shopping center and other retail shops on the Leased Premises; all improvements were to remain the lessee's property until termination of the Lease. (Lease ¶s 5, 6). Paragraph 10 of the Lease, which is critical to the

---

[2] Unless otherwise indicated, references to the "Bankruptcy Code" or "Code" are to the Bankruptcy Code, 101 U.S.C. § 101, *et seq*, and references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[3] According to the Landlords, the Opposition, as originally filed, did not accurately identify the owners of the real property covered by the Lease. The Landlords filed, and the Court granted, a motion seeking to substitute the Landlords named above as the real parties in interest in the Opposition. (Docs. 157, 200).

2

Court's decision on the Motions and the Opposition, reads as follows:

> Lessee may, without the consent of Lessor, assign this Lease, or sublease or vacate the leased premises, in whole or in part, at any time during the term of this Lease, provided, however, that Lessee shall continue to remain liable and responsible for the payment of all rentals required to be paid under the terms and provisions hereof and for the due performance of all other terms, covenants and conditions herein set forth. . . .

And paragraph 25 provides that "[t]his Lease and all the covenants and provisions thereof shall inure to the benefit of and be binding upon the parties hereto, and their respective heirs, legal representatives, successors and assigns. . . ."

In October 2005, the Original Lessee as assignor, and Bruno's Supermarkets, Inc. as assignee ("Supermarkets"), entered into a Lease Assignment (the "First Assignment") pursuant to which Supermarkets was assigned all the Original Lessee's right, title and interest as the lessee under the Lease, and Supermarkets assumed all the obligations of the lessee under the Lease arising from and after the date of the assignment.[4] Also in October 2005, Supermarkets as assignor and Quality as assignee, entered into an Assignment and Assumption of Ground Lease (the "Second Assignment" and together with the First Assignment, the "Assignments"). The Second Assignment stated that the Original Lessee's interest under the Lease had been assigned to Supermarkets, and that interest was being further assigned by Supermarkets to Quality. It further provided for Quality's assumption of the lessee's obligations under the Lease.[5] The Subleases each cover a portion of the Leased

---

[4] At the time of the First Assignment, the Original Lessee was a chapter 11 debtor in a case pending in the District of Delaware, and the First Assignment was made pursuant to the Original Lessee's confirmed plan.

[5] The Second Assignment was dated October 26, 2005, two days before the date stated in the First Assignment as its execution date, i.e. October 28, 2005. Upon closer review it appears the Assignments were executed simultaneously: The notaries' acknowledgments for Supermarkets in both Assignments and for the Original Lessee in First Assignment were dated

3

Premises, and as the assignee of the prime lessee's interest under the Lease, Quality also claims to be the sublessor under the Subleases.

On February 5, 2009, Supermarkets filed for relief under chapter 11 of the Bankruptcy Code (Case No. 09-00634-BGC-11 and herein, the "SM Case"). The SM Case was filed in the Southern Division of this District and was assigned to Judge Benjamin G. Cohen. The Landlords filed a motion in the SM Case in which they sought, among other relief, the entry of an order deeming the Lease terminated (SM Case Doc. 1171 and herein, the "Landlords' SM Motion"). The only parties in the contested matter commenced by the Landlords' SM Motion were the Landlords and Supermarkets; Quality was not a party to that contested matter.

On March 26, 2010, Judge Cohen entered an Order on the Landlords' SM Motion (SM Case Doc. 2301, and herein the "March 26, 2010 Order"), in which he held, *inter alia*, that:

> In regard to [Supermarkets'] interest in the [L]ease, while the [Landlords' SM Motion] is not a specific motion to require [Supermarkets] to assume or reject the [Lease], it is due to be granted to the extent that this Court finds that [Supermarkets] and the [L]andords had an unexpired lease that was rejected by operation of law and pursuant to [Supermarkets'] confirmed plan.

March 26, 2010 Order, p.8.

The March 26, 2010 Order continued, and Judge Cohen specifically withheld any decision regarding Quality's interest in the Lease: "In regard to the underlying state law issues, this Court has

---

October 28, 2005, and the venue of those acknowledgments was Greenville County, South Carolina. The acknowledgment for Quality in the Second Assignment was dated October 26, 2005, and its venue was Marshall County, Alabama. Apparently, the Second Assignment was signed first by Quality in Alabama, and thereafter both Assignments were sent to South Carolina for the signatures of Supermarkets and the Original Lessee. It is safe to assume delivery of the two Assignments from Alabama to South Carolina took two days. In any event, no party raised an issue regarding the dates of the two Assignments, and after the lapse of over five years it is difficult to see how such a technicality would have any effect on the parties' respective rights and obligations.

4

Case 10-42783-JJR11    Doc 209    Filed 01/31/11    Entered 01/31/11 16:15:31    Desc
Main Document    Page 4 of 11

not, should not, and will not decide those issues. Included in that conclusion is any decision on the impact of this order on the interests of Quality Properties."(*Id.* p.9).[6] In their Stay Relief Motion, the Landlords have asked this Court to lift the stay in the instant case—Quality's case—and thereby allow them to seek an adjudication from Judge Cohen in the SM Case regarding the status of the Lease vis-a-vis Quality as successor lessee.

### III. Jurisdiction and Abstention

These are contested matters under Bankruptcy Rules 4001(a), 6006(a) and 9014, and the Court has jurisdiction to hear the same pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. These are core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has authority to enter a final order. More specifically, Quality's Motions seeking assumption of the Lease and Subleases, and the Landlords' Opposition and Stay Relief Motion, are all proceedings arising under title 11—Code §§ 365(a) and 362(d). Accordingly, it is fitting, if not mandatory for this Court to address in this case—Quality's chapter 11 case—what effect Supermarkets' rejection of the Lease in its chapter 11 case had on Quality's lessee's interest in the Lease. Inasmuch as Quality is now a

---

[6]The reasons behind Judge Cohen's refusal to decide issues pertaining to the Landlords' and Quality's interest in the Lease are apparent. On March 26, 2010, Quality had not yet commenced the instant chapter 11 case—Quality was not then a debtor in a bankruptcy case; Quality was not a party to the contested matter commenced by the Landlords' SM Motion, thus Quality's interest in the Lease was not before Judge Cohen for adjudication; and after a determination that the Lease had been rejected as between Supermarkets and the Landlords, any further adjudication of issues pertaining to rights and obligations of the Landlords and Quality under the Lease would have had no, or at most a remote impact on Supermarkets' bankruptcy estate and such issues were, at that time, best left to the state courts. However, when Quality filed for relief in the instant case, those issues became core bankruptcy proceedings for this Court to decide in Quality's chapter 11 case and the reasons for deference by a bankruptcy court to the state courts no longer applied.

5

debtor in a bankruptcy case pending in this Court, and seeks to assume the Lease and Subleases under Code § 365(a), there is no good reason to abstain from hearing these matters or otherwise defer to state courts for an adjudication of the issues raised in the Motions, Opposition and Stay Relief Motion.[7] Bankruptcy courts should retain, and not abstain from hearing core proceedings, if for no other reason than bankruptcy courts are better versed in the Bankruptcy Code and Bankruptcy Rules, and Congress obviously expected them to exercise jurisdiction in such matters. 11 U.S.C. §157. For the sake of timeliness, judicial economy and consistency of results, Congress gave bankruptcy courts broad jurisdiction that contemplates consolidation in a single forum of all proceedings arising under the Bankruptcy Code, arising in a bankruptcy case or, subject to certain limitations, related to a case.[8] Allowing piecemeal adjudication by conceding jurisdiction to state courts, especially in core proceedings, defeats the single-forum benefits of bankruptcy jurisdiction. Moreover, under the circumstances in this case it would be inappropriate for this Court to burden another court, including another bankruptcy court, with core matters arising in a case pending before this Court. Recall that in his March 26, 2010 Order Judge Cohen specifically refrained from ruling on what consequences, if any, the rejection of the Lease by Supermarkets might have had on Quality's interest in the Lease.[9]

---

[7]*In re Cook*, 384 B.R. 282, 297 fn.21 (Bankr. N.D. Ala. 2008) ("Unless there are compelling reasons, it is inappropriate for a bankruptcy court to abstain from adjudicating a critical issue in a core proceeding that involves property of the estate over which the bankruptcy court has exclusive jurisdiction.")

[8]*See generally* 28 U.S.C. §§ 1334, 157.

[9]At the risk of stating the obvious, on March 26, 2010, the impact of rejection on Quality's interest in the Lease could not have been a core proceeding in Quality's case; that case had not yet been filed. Thus, deference to state courts for a resolution of the status of Quality's interest in the Lease — an issue at the time between two non-debtors, the Landlords and Quality—was appropriate and possibly the only alternative given the posture of the parties.

This Court concludes that it would be ill-advised to now grant the Stay Relief Motion and thereby surreptitiously impose upon Judge Cohen the chore of adjudicating an issue he properly avoided, the resolution of which would have little or no impact in the SM Case, but will likely have a significant impact on Quality's ability to successfully reorganization in its chapter 11 case.

## IV. Analysis and Conclusions of Law

The crux of the Landlords' argument is rejection of the Lease by Supermarkets in the SM Case caused Quality to lose the leasehold estate it obtained through the Assignments, thereby leaving Quality with no remaining rights or interest to assume under Code § 365(a).[10] This argument fails to take into account exactly what Supermarkets rejected; after all, it could reject no more than what it had retained after the Second Assignment.

As mentioned, the Lease specifically permitted the Original Lessee to assign the lessee's interest in the Lease without the consent of the Original Lessor, and the rights and obligations under the Lease were expressly binding upon, and inured to the benefit of those parties' successors and

---

[10] The Landlords' argument is much the same with respect to the Subleases: Quality's position as sublessor is dependent on its underlying prime leasehold estate, and that estate, according to the Landlords, no longer exists after the rejection of the Lease by Supermarkets.

The Landlords also asserted in their Opposition that pursuant to Code § 365(b)(1), the Lease could not be assumed because of various uncured defaults. However, at the initial hearing on the Motion and Opposition (January 6, 2011), no evidence was offered to prove defaults were outstanding under the Lease, although counsel for the Landlords and Quality both agreed Quality had not provided the Landlords with sufficient evidence that the insurance requirements under the Lease had been satisfied. Thereafter the Landlords filed a Supplementary Amendment to the Opposition (Doc. 185) in which they specifically asserted that Quality was in default because it had not provided to the Landlords proof of liability and casualty insurance as required by the Lease. At the January 20, 2011 hearing on the Supplementary Amendment Quality offered into evidence a certificate of insurance that confirmed the required insurance coverages were in place. For naught proven by the Landlords or otherwise, the Court concludes there was no uncured default that would prohibit assumption of the Lease. (Doc.190).

assigns.[11]  Thus, both Assignments were valid without the consent of the parties who held the lessor's interest at the respective times the Assignments were made.  It is true that the assignors continued to be liable for the rent and other obligations of the lessee under the Lease, but they retained no remainder, reversion, contingency or other right whatsoever that could once again vest in them any inkling of the leasehold estate they conveyed under the Assignments.[12]  The Assignments of the leasehold estate—tenancy for a term, tenancy for years—created by the Lease, transferred to the assignees the totality of such estate for the remaining term of the Lease or until it was otherwise terminated in accordance with the conditions expressed in the Lease.[13]  The Assignments did not convert the leasehold estate to a sublease.[14] The survival of a sublease is contingent on the continued viability of the underlying prime leasehold estate held by the prime lessee/sublessor.[15]  A sublease creates a new tenancy which relies on the underlying prime lease for its subsistence, while an assignment of a lessee's interest under a lease transfers the original tenancy

---

[11] Lease ¶s 10, 25, quoted *supra*.

[12] *Flynn v. Mikelian,* 208 Cal. App. 2d 305, 311 (Cal. Dist. Ct. App. 1962)("The plaintiffs, as assignors of the lease, retained no interest in the premises in the nature of a right of reentry which they could exercise in the event of an abandonment of the premises by [the assignee].").

[13] *See Id*. at 312; *Urban Inv. & Develp. Co. v. Maurice L. Rothschild & Co.*, 323 N.E.2d 588, 592 (Ill. App. Ct. 1975) ("Therefore . . . we are bound by the rule that an assignment of a lease occurs where the lessee transfers the entire unexpired remainder of the term created by his lease.").

[14] *Berg v. Ridgway,* 646 140 N.W.2d 95,100 (Iowa 1966)("An assignment and subletting are two different things. An assignment of a lease transfers the lessee's entire interest without retaining a reversionary interest.  A sublease reserves a reversionary interest in the lessee.") (*citing* 51 C.J.S. Landlord and Tenant § 37).

[15] *Herman v. Campbell,* 195 P.2d 801 (Cal. Dist. Ct. App. 1948); *Wehrle v. Landsman,* 23 N.J. Super. 40, 92 A.2d 525 (N.J. Super. Ct. Law Div. 1952).

without creating a new leasehold estate.[16] Should the underlying prime leasehold held by the sublessor terminate, expire or otherwise cease to exist, so does the sublessee's tenancy unless the prime lessor agrees otherwise.[17] However, should the sublease tenancy terminate independent from, and earlier than the prime lease, the underlying prime leasehold estate is not affected, and the prime lessee (former sublessor) may return to the enjoyment, use and occupancy of the previously subleased premises for the remainder of the term of the prime lease.

Each of the Assignments in this case transferred and assigned *all* the lessee's interest to the assignee, which included the leasehold estate for the remainder of the Lease term and all the rights and privileges of the lessee. Put simply, as a result of each of the Assignments, the respective assignors—first the Original Lessee and second Supermarkets—were left with none of the lessee's tenancy, or what would properly go under the asset column in their financial statements. Although the assignees assumed the lessee's liabilities under the Lease, the Assignments did not, and under the terms of the Lease could not, absolve the assignors from their lessee's obligations.[18] And it is

---

[16] *Jaber v. Miller,* 239 S.W.2d 760, 761 (Ark. 1951) ("We think of an assignment as the outright transfer of all or part of an existing lease, the assignee stepping into the shoes of the assignor. A sublease, on the other hand, involves the creation of a new tenancy between the sublessor and the sublessee, so that the sublessor is both a tenant and a landlord."); *Italian Fisherman, Inc. v. Middlemas,* 545 A.2d 1 (Md. 1988).

[17] *National Shawmut Bank of Boston v. Correale Min. Corp.,* 140 F. Supp. 180, 184 (D.W. Va. 1956)("A subtenant has no greater rights against a landlord than the tenant, and the termination of a primary lease terminates the sublease.") (*citing Hawley Corp. v. West Virginia Broadcasting Corp.,* 197 S.E. 628 (Va. 1938).

After default and termination of a prime lease, the prime lessor may agree to allow a sublessee to retain its sublease estate and attorn to the prime lessor. The Lease in this case so provides in ¶ 10.

[18] *Kelly v. Alstores Realty Corp.,* 613 A.2d 1163, 1166 (N.J. 1992)("We agree that, as a matter of law, a lessee remains liable for the performance of its obligations under a lease despite having assigned its leasehold."); *Kornblum v. Henry E. Mangels, Co.,* 167 So. 2d 16, 18 (Fla.

these obligations that were rejected by Supermarkets in the SM Case. Utilizing Code § 365(a), Supermarkets was able to purge itself of the lessee's liabilities under the Lease,[19] but it no longer had any rights in the leasehold tenancy to reject—those rights were vested in Quality and beyond the reach of Code § 365(a) in the SM Case.

For the foregoing reasons, the Court concludes that Quality's Motions seeking to assume the

---

Dist. Ct. App. 1964) ("The general rule is that a lessee may not escape liability upon express covenants in a lease by assigning the lease to another.").

[19]Following the Second Amendment, Supermarkets was no longer the lessee under the Lease, although it remained obligated to the Landlords to back-stop defaults by Quality. Thus, after the Second Assignment, Supermarkets' posture under the Lease was tantamount to that of a surety of Quality's performance of the lessee's obligations. *Corner Assoc. v. W.R. Grace & Co.-Conn,* 988 F. Supp. 970, 974 (E.D. Va. 1997) ('The effect of the assignment is to make the lessee a surety to the lessor for the assignee . . . .') (*quoting Samuels v. Ottinger,* 146 P. 638, 639 (Cal. 1915)); *Price v. S. S. Fuller, Inc.,* 639 P.2d 1003, 1009 (Alaska 1982) ("[T]he original lessee is secondarily liable to the lessor as between him and his transferee; that is, the original lessee is, in effect, a surety.") (*citing* Restatement (second) of Property § 16.1(1)(a) and comments c, e (1977)); *Kendall v. Ernest Pestana, Inc.*, 709 P.2d 837, 846 (Cal. 1985) ("The lessor's interests are further protected by the fact that the original lessee remains a guarantor of the performance of the assignee."); *Gholson v. Savin,* 31 N.E.2d 858, 862 (Ohio 1941) ("Thus where a lessee of a lease assigns it to one who covenants to pay the accruing rental to the landlord who has notice of the assignment . . . the lessee . . . may insist that the rights of a surety be observed . . . .")(citing 1 Brandt on Suretyship & Guaranty, 3d ed., 90, § 37).

A question that begs for an answer is, had the Lease vis-a-vis Supermarkets and the Landlords become an executory contract? Although belaboring that question in this case is academic, this Court believes the Landlords' claim against Supermarkets in the latter's chapter 11 case was neither a lease nor executory contract. Rather it was a contingent claim (*cf.* Code § 101(5); Bankruptcy Rule 3003(c)(2)); contingent on Quality's failure to perform its obligations under the Lease. And perhaps it was a claim that should have been estimated. 28 U.S.C. § 157(b)(2)(B). We do know that Supermarkets' purported rejection of the Lease did not give rise to a claim under Code § 502(b)(6), which allows a lessor's claim (subject to certain limitations) "for damages resulting from the *termination* of a lease . . . ." As stated—perhaps ad nauseam—the Lease was not terminated, and it is alive and well with Quality as lessee and, much to their chagrin, the Landlords as lessor. After a cursory review of Supermarkets' chapter 11 file, it appears the Landlords' claim was not scheduled in that case, and they did not file a proof of claim. Accordingly, it now appears the issues in respect to the basis and amount of any claim of the Landlords in Supermarkets' case are moot, and any event are not issues that will be adjudicated by this Court in this case.

Lease, the Assignments and Subleases are due to be granted, and the Landlord's Opposition and Stay Relief Motion are due to denied. The Court will enter an Order consistent with this Opinion.

Dated: January 31, 2011

<u>/s/ James J. Robinson</u>
JAMES J. ROBINSON
United States Bankruptcy Judge
