UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| QUALITY PROPERTIES, LLC, | } | Case No. 10-42783-JJR-11 |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| QUALITY PROPERTIES, LLC, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | AP No. 10-40132-JJR |
| | } | |
| PINE APPLE CONVEYOR | } | |
| SERVICE, INC. et al., | } | |
| | } | |
| Defendants. | } | |

**OPINION AND ORDER ON:**
**(1) NOTICE TO SHOW CAUSE AND**
**(2) MOTIONS TO ABSTAIN AND REMAND**

*Background*

The following adversary proceedings (the "Removed APs"), in which the Debtor, Quality Properties, LLC, was named as a defendant, were originally commenced as civil actions in either the Shelby County, Alabama Circuit or District Court ("State Courts"), and were removed to this Court by the Debtor pursuant to 28 U.S.C. §§ 1334 and 1452(a):[1]

(1) AP 10-40118 *Roof Curb Systems, LLC v. Debtor and Pine Apple Conveyor Service, Inc.* ("Pine Apple");

---

[1] With the exception of AP 10-40118 (Roof Curb Systems), which was originally commenced in the District Court of Shelby County, all the other Removed APs originated in the Circuit Court of Shelby County.

1

(2) AP 10-40119 *Universal Door Systems, Inc. v. Pine Apple; Marvin's, Inc.; Debtor; Mark Monk; and First National Bank of Talladega* ("FNBT");

(3) AP 10-40120 *Building Materials Wholesale, Inc. v. Pine Apple; Ted L. Monk, Ava B. Monk, Debtor; and FNBT*;

(4) AP 10-40121 *Shelby Concrete Co., Inc. v. Pine Apple; Ted L. Monk; Ava B. Monk; Debtor; and FNBT*;

(5) AP 10-40122 *The Sherwin-Williams Co. v. Pine Apple; Debtor; and FNBT*;

(6) AP 10-40123 *Construction Materials, Inc. v. Pine Apple; Ted L. Monk; Mark Monk; Debtor; Marvin's, Inc.; and FNBT*; and

(7) AP 10-40124 *Pine Apple v. Debtor and FNBT*.[2]

All the plaintiffs in the Removed APs made monetary demands for amounts they alleged were due for labor and materials provided for the construction of a Marvin's Building Materials & Home Center Store (the "Project"), which is owned by the Debtor. Those same plaintiffs claimed mechanics' liens against the Project. Pine Apple alleged it was the general contractor for the Project, and the other plaintiffs alleged they were subcontractors. First National Bank of Talladega ("FNBT") made a loan to the Debtor to finance the construction of the Project, and that loan is allegedly secured by a mortgage against the Project. In this adversary proceeding – the Consolidated AP – the Debtor seeks a determination of the validity and extent of the several mechanics' liens and

---

[2]The Debtor, as plaintiff/appellant, also removed an action it had commenced against Pine Apple, as defendant/appellee, in the Shelby County Circuit Court pursuant to a "Complaint Stating Notice of Appeal From an Arbitration Award Pursuant to Ala. R. Civ. P. 71(B) and Motion to Set Aside and Vacate Arbitration Award" (the "Arbitration Appeal AP"). Upon removal, the Arbitration Appeal AP was assigned case number AP 10-40125, and along with the Removed APs was consolidated with this adversary proceeding, i.e. AP 10-40132 and herein referred to as the "Consolidated AP."

2

of FNBT's mortgage, as well as their respective priorities, all of which allegedly encumber the Project. Because of common questions of law and fact, the Removed APs previously were consolidated with the Consolidated AP.

Some of the subcontractor-plaintiffs named Mark Monk, Ted L. Monk and/or Ava B. Monk (the "Monks") as defendants in their complaints because one or more of the Monks allegedly guaranteed Pine Apple's obligation to pay those subcontractors. Marvin's was apparently named as a defendant by some of the subcontractor-plaintiffs because Marvin's has an interest in the Project as lessee.

### *Show Cause and Rule 9027(e)(3)*

On August 1, 2011, this Court issued an Order and Notice to Show Cause (Doc. 86, and herein, the "Show Cause Notice")[3] that essentially required parties to the Removed APs to comply with Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure.[4] That Rule requires a party to an action removed to bankruptcy court, "other than the party filing the notice of removal, [to] file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim or cause of action the proceeding is core or non-core. . . . If . . . non-core, it shall state that the party does or does not consent to the entry of final orders or judgment by the bankruptcy judge."

---

[3] Documents filed via CM/ECF in the Consolidated AP are designated as "Doc." followed by the CM/ECF document number, e.g. Doc. 10. Documents similarly filed in one of the Removed APs are further identified by the particular AP case number, e.g. Doc. 10 AP 10-40118.

[4] In the Show Cause Notice, the Court also required the parties to show cause why this bankruptcy judge should not recuse himself due to a potential conflict involving his newly appointed law clerk. That issue was resolved by this judge "borrowing" a law clerk from another judge in the Northern District of Alabama to assist him with the Consolidated AP, the Removed APs, the Arbitration Appeal AP and related proceedings.

3

The Debtor initially alleged the causes of action in the Removed APs were non-core, but later corrected its "error," and now alleges they are core (Docs. 99, 102) and should be adjudicated by this Bankruptcy Court.

In response to the Show Cause Notice, Sherwin-Williams, Shelby Concrete, and initially, Construction Materials alleged the causes of action in the Removed APs were non-core, but consented to the entry of final judgments by this Court. (Docs. 87, 91, 93). Pine Apple alleged the causes of action were non-core and, and although apparently conceding they were related to the Debtor's Chapter 11 case, did not consent to the entry of final judgments by this Court. (Doc. 94). Additionally, Pine Apple asserted that this Court should abstain from adjudicating the Removed APs and remand them to the State Courts, arguing that this Article I Court lacked authority under the Constitution to adjudicate the causes of action raised in the Removed APs, and cited as authority the recent Supreme Court opinion in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Following its initial response, Construction Materials changed course, and joined Pine Apple in requesting abstention and remand. (Doc. 98).

Finally, the Debtor and FNBT argued that the causes of action asserted in the Removed APs were core proceedings, that this Court should retain jurisdiction, and adamantly opposed Pine Apple's and Construction Materials' requests for abstention and remand. (Docs. 99, 100). Except as mentioned above, none of the other parties to the Removed APs responded to the Show Cause Notice.

*General Contractor AP*

A closer look at the Removed APs, and in particular AP 10-40124 — *Pine Apple v. Debtor and FNBT* (the "General Contractor AP") — will highlight the issues that must be addressed with

4

respect to Pine Apple's response to the Show Cause Notice, including its request for abstention and remand. The General Contractor AP grew out of a lawsuit commenced on April 22, 2009 when Pine Apple filed a complaint against the Debtor and FNBT in the Shelby County Circuit Court (the "General Contractor Lawsuit").[5] Pine Apple alleged it had entered into a construction contract dated May 9, 2008 (the "General Contract") with the Debtor, and pursuant thereto had provided services, supplies and material for construction of the Project. Pine Apple claimed it was due the sum of $764,709.00 under the General Contract, and prayed for a judgment against the Debtor for such sum, plus interest and attorneys' fees, and sought a mechanic's lien against the Project. Additionally, Pine Apple asserted its lien should have priority over FNBT's mortgage.

Immediately after filing its complaint in the General Contractor Lawsuit, Pine Apple filed a Motion to Stay and to Sever, in which it asked the Circuit Court to enforce an arbitration provision applicable to the General Contract, and to stay the claims pertaining to FNBT until the conclusion of mandatory arbitration.[6] The Debtor filed a motion to stay arbitration, and alleged that Pine Apple had waived its right to have the parties' disputes submitted to arbitration.[7] The Circuit Court denied the Debtor's motion and placed the General Contractor Lawsuit on the administrative docket pending completion of the arbitration.[8] At the conclusion of the arbitration, an Award of Arbitration

---

[5] Doc. 10 - 2 AP 10-40124.

[6] Doc. 10 - 3 AP 10-40124. According to the Circuit Court Clerk's filing stamps, the complaint in the Contractor Lawsuit was filed at 3:03 pm on April 22, 2009, and the Motion to Stay and to Sever was filed at 3:45 pm that same day.

[7] Doc. 10 - 5 AP 10-40124.

[8] Doc. 10 - 18 AP 10-40124.

5

was entered in favor of Pine Apple and against the Debtor for $1,269,000.00.[9] Pine Apple's request for a mechanic's lien against the Project was not addressed in the award or otherwise by the arbitrator. On July 23, 2010, the Circuit Court entered an order denying the Debtor's motion to vacate the arbitration award and, pursuant to Rule 21B(f) of the Alabama Rules of Civil Procedure, granted Pine Apple's motion to have the award entered as a final judgment of the Circuit Court (the "Arbitration Award Order"). The Circuit Court later ordered that claims against FNBT would remain on the court's docket.[10] On August 20, 2010, the Debtor appealed to the Alabama Supreme Court from the Arbitration Award Order.[11] On October 1, 2010, the Debtor filed its petition for relief under the Bankruptcy Code,[12] and suggestions of bankruptcy were filed with the Circuit Court and Alabama Supreme Court, and the latter court gave notice that the Debtor's appeals were stayed in accordance with Code § 362.

*Subcontractors APs*

The claims asserted by the six subcontractor-plaintiffs (the "Subcontractors") in their respective Removed APs (the "Subcontractors APs")[13] are not unlike the claims asserted by Pine

---

[9] Doc. 10 - 25, 32 AP 10-40124.

[10] Doc. 10 - 87, 92 AP 10-40124.

[11] Doc. 10 - 91 AP 10-40124. A second notice of appeal from a certificate of judgment was filed by the Debtor on October 5, 2010. Doc. 10 - 97 AP 10-40124. The certificate of judgment was not included in the Circuit Court documents filed with the removal.

[12] 11 U.S.C. § 101 *et seq.*, and herein the "Code." Unless otherwise indicated, the symbol "§" is a reference to a section, subsection, paragraph or other subdivision of the Code.

[13] AP 10-40118, AP 10-40119, AP 10-40120, AP 10-40121, AP 10-40122 and AP 10-40123.

6

Apple in the General Contractor AP.[14] Each Subcontractor seeks a money judgment for an amount that allegedly remains unpaid for labor and materials furnished pursuant to a subcontract with Pine Apple for construction of the Project, and each alleges it had given notice of its mechanic's lien to the Debtor as owner of the Project, and filed the statutorily required verified statement of lien with the Shelby County, Alabama Probate Office.[15]

## *Core Proceedings*

With the above as a backdrop, the Court must answer two jurisdictional questions: First, are the claims presented in the Removed APs core proceedings within 28 U.S.C. § 157(b)(2), and second, if they are core, may a non-Article III court adjudicate such claims? If those two questions

---

[14] As mentioned above, Marvin's and the Monks were not named as defendants in all the Removed APs, and the claims against those defendants are discussed *infra*.

[15] As one of the required steps for perfection of a mechanic's lien against Alabama real property, the lien claimant must timely file a verified statement of lien containing specific information. Code of Ala. 1975, §§ 35-11-213 and 215. Although each of the Subcontractors and Pine Apple claimed it had filed a verified statement of lien before the Debtor filed its bankruptcy petition, Code § 362(b)(3) would have allowed those statements to be filed post-petition without first obtaining relief from the automatic stay.

Similarly, another prerequisite to perfection of a mechanics' lien in Alabama is the commencement of a lawsuit to enforce such lien. Code of Ala. 1975, §§ 35-11-221 and 222. Assuming those lawsuits were timely filed, the Subcontractors and Pine Apple appear to have satisfied that requirement when they filed lawsuits – now included among the Removed APs – in the State Courts to establish and enforce their respective liens. Nonetheless, if the Debtor had filed its petition before the Subcontractors and Pine Apple had filed their State Court lawsuits, Code § 546(b)(2) would have allowed, indeed required, that the Subcontractors and Pine Apple give notice as a substitute means of perfecting their liens. *In Re Cook*, 384 B.R. 282 (Bankr. N.D. Ala. 2008).

Recall that the establishment and enforcement of the lien claimed by Pine Apple was not presented to the arbitrator, and was not mentioned in the Arbitration Award. This Court has made no determination regarding the consequences, if any, of Pine Apple's failure to seek enforcement of a mechanic's lien in its arbitration demand.

are answered in the affirmative, should the Court nonetheless abstain and remand the Removed APs to the State Courts?

This Court concluded in *In re Cook*, 384 B.R. 282, 291 (Bankr. N.D. Ala. 2008), that a determination of the validity (including perfection) and extent of mechanics' liens, the priorities among such liens and other competing interests in estate property, and the allowance or disallowance of claims allegedly secured by such liens and other interests, was a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (K). In the instant case, except with respect to claims asserted against the Monks, nothing has come to the Court's attention that would cause it to reach a different conclusion with respect to the Removed APs and the Consolidated AP. As part of the claims allowance process under Code §§ 502 and 506, and Rule 3007 of the Federal Rules of Bankruptcy Procedure, this Court must determine whether to allow or disallow the respective claims and liens (including FNBT's mortgage) asserted by the Subcontractors, Pine Apple and FNBT against the Debtor and the Project – undeniably core proceedings within 28 U.S.C. § 157(b)(2)(B).[16] And to the extent those claims are allowed as secured, this Court must determine the validity and extent of, and the priorities among such liens and mortgage – also core proceedings within 28 U.S.C. § 157(b)(2)(K).[17] Admittedly, the adjudication of the validity, extent and priorities of mechanics' liens and real estate mortgages is, to a large extent, based on state law. However, merely because a resolution of these matters requires application of Alabama's mechanic's lien and mortgage laws does not remove them

---

[16] "Core proceedings include . . . allowance or disallowance of claims against the estate . . . ."

[17] "Core proceedings include . . . determinations of the validity, extent, or priority of liens . . . ."

8

from this Court's core jurisdiction. 28 U.S.C. § 157(b)(3).[18] Indeed, determining the validity (including perfection) of liens arising under state law and determining their priorities are tasks frequently performed by bankruptcy courts in the course of the claims-allowance process, restructuring the debtor-creditor relationship, liquidation of estate assets, and administration of the estate. 28 U.S.C. § 157(b)(2).[19] Similar adjudications involving competing security interests arising under a state's adopted version of the Uniform Commercial Code, and its laws governing judgment, tax and other liens, require the application of state law, but are nonetheless core bankruptcy proceedings.

The Eleventh Circuit recently stated:

> To begin with, the [Supreme] Court provided guidance by setting forth the three *critical* in rem functions of bankruptcy courts: "[1] the exercise of the exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debts."

*State of Florida v. Diaz (In re Diaz)* 647 F.3d 1073, 1084 (11th Cir. 2011) (quoting *Central Virginia Community College v. Katz*, 546 U.S. 356, 363-64 (2006)) (emphasis added).

To perform its critical functions as prescribed by the Supreme Court and Eleventh Circuit, this Bankruptcy Court must exercise jurisdiction over the Debtor's property – which includes the Project – and make an equitable distribution of that property among creditors. Neither of those functions can be accomplished without first determining whether to allow or disallow the claims of Pine Apple, the Subcontractors and FNBT, and if allowed, whether those claims are secured or unsecured, and if secured, adjudicating the validity and extent of, and priorities among the several

---

[18] "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."

9

mechanics' liens and FNBT's mortgage. The Court, therefore, concludes that the causes of action asserted in the Removed APs and the Consolidated AP, except those against the Monks – discussed below – are core proceedings under 28 U.S.C. § 157(b)(2).

### *Article I Authority*

Although the Removed APs and Consolidated AP are core proceedings, this Bankruptcy Court – a court created by Congress under Article I of the Constitution – must have constitutional authority for their adjudication. Proceedings may be constitutionally resolved by a bankruptcy court when the proceedings involve a "public right," which exists when the proceedings attempt to effect a pro rata distribution of the bankruptcy estate or when creditors file proofs of claims that are integral to the claims allowance process. *See Marshall*, 131 S. Ct. at 2611-18; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51-64 (1989); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 63-76 (1982) (plurality opinion); *id.* at 89-92 (Rehnquist, J., concurring in judgment).

The Supreme Court first recognized in *Murray's Lessee* that "public rights" may exist for proceedings in which "the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855). In *Crowell v. Benson*, the Court attempted to frame "public rights" as issues that arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," while "private rights" instead focused on "the liability of one individual to another under the law as defined." 285 U.S. 22, 50-51 (1932). Since *Crowell*, the Supreme Court has

---

[19] "Core proceedings include . . . matters concerning the administration of the estate . . . ."

broadened the definition of "public rights" to be more pragmatic and include relief that flows from a federal statutory scheme or completely depends on the adjudication of a claim created by federal law. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853-56 (1986); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584-89 (1985).

In the bankruptcy context, the Supreme Court ruled in *Northern Pipeline* that a bankruptcy court's ability to adjudicate proceedings is limited under the "public rights" doctrine. 458 U.S. at 63-76 (plurality opinion); *id.* at 89-92 (Rehnquist, J., concurring in judgment). Although the Court issued only a plurality opinion on the reasoning of its decision, a full majority agreed that bankruptcy courts could not preside over a state law contract claim that involved a party not otherwise involved in the bankruptcy proceeding. *Id.* at 63-76 (plurality opinion); *id.* at 90-92 (Rehnquist, J., concurring in judgment). The plurality opinion suggested a useful paradigm:

> [T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Id.* at 71 (plurality opinion).

The Supreme Court addressed "public rights" in bankruptcy courts again in *Granfinanciera, S.A. v. Nordberg*, in which the Court suggested that proceedings that augment the bankruptcy estate are more likely to involve "public rights." 492 U.S. at 51-64. The bankruptcy trustee in *Granfinanciera* sued a non-creditor to recover an allegedly fraudulent transfer. *Id.* at 36-37. Using the *Northern Pipeline* analysis, the Court noted that fraudulent conveyance actions were not part of the restructuring of debtor-creditor relations, but were "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the

11

bankruptcy res."[20] *Id.* at 56. The Court therefore ruled that the fraudulent conveyance issue was a "private right." *Id.*

*Stern v. Marshall* then demonstrated that proceedings in which the defendant submitted a proof of claim can still involve "private rights" if the proof of claim is not integral to the restructuring of the debtor-creditor relationship. 131 S. Ct. at 2611-18 (*citing Langenkamp v. Culp*, 498 U.S. 42 (1990) (per curiam); *Katchen v. Landy*, 382 U.S. 323 (1966)). After the debtor filed bankruptcy in *Marshall*, a creditor filed a complaint against the debtor for defamation and also filed a proof of claim in the bankruptcy case. *Id.* at 2601-03. The debtor responded by asserting truth as a defense and filing a counterclaim against the creditor for tortious interference in her financial affairs. *Id.* Emphasizing again that the counterclaim would "augment the bankruptcy estate" and did not merely seek "a pro rata share of the bankruptcy estate," the Court ruled that the tortious interference issue in the counterclaim did not stem from the debtor's bankruptcy and would not "necessarily be resolved" in the claims-allowance process. *Id.* at 2611-18. The Court therefore ruled that the contested proceedings in *Marshall* were not "public rights," and could not be adjudicated by the bankruptcy court. *Id.*

Unlike the proceedings in *Granfinanciera* and *Marshall*, which would augment the bankruptcy estate, the liens claimed in the Removed APs and FNBT's mortgage would not affect the value of the bankruptcy res – the Project. Instead, the liens and mortgage are all claimed against the same property, and resolving their validity and priority would determine the distribution of the Debtor's assets. Although the issues regarding the validity and priority of the liens and mortgage

---

[20]In a footnote, however, the Supreme Court carefully limited its holding by noting that not all debtor-creditor relations are necessarily matters of "public rights." *Granfinanciera*, 492 U.S. at 56 n. 11.

12

involve state law, state law is applicable throughout bankruptcy proceedings to determine the hierarchy of claims for the restructuring of debtor-creditor relations. These proceedings therefore fall within the "public rights" exception and can be heard by this Article I Court.

Additionally, Shelby Concrete, Sherwin-Williams, Universal Door Systems, Pine Apple and FNBT have filed proofs of claim in this case.[21] These parties strengthened the constitutionality of their proceedings in this Court. Unlike the counterclaim in *Marshall*, which addressed an issue that was not integral to the restructuring of the debtor-creditor relationship, the alleged liens in the Removed APs affect the pro rata distribution of the Debtor's assets. To resolve the claims in the Removed APs, this Court would have to decide the validity and priority of the liens and mortgage, and the claims allowance process would leave no issues for another court to address.

Therefore, proceedings in this Court with regard to the liens claimed in the Removed APs and FNBT's mortgage are both core and constitutionally authorized, and this Court can enter appropriate orders and judgments. 28 U.S.C. § 157(b)(1).

*Abstention and Remand*

Having found authority to adjudicate these matters, the Court must next address the request by Pine Apple and Construction Materials that this Court abstain and remand the Removed APs to State Court. Remand would be mandatory if the causes of action raised in the Removed APs were only related to the Debtor's chapter 11 case and could be timely adjudicated in the State Courts; however, as discussed above, those actions are core proceedings arising under the Bankruptcy Code

---

[21]Building Materials Wholesale, Roof Curb Systems and Construction Materials did not file claims in the bankruptcy case, but merely had their cases removed to this Bankruptcy Court from the State Court proceedings. Although these subcontractor-plaintiffs did not file claims, the absence of claims does not affect the ultimate constitutionality of these proceedings for the reasons discussed in the previous paragraph.

13

and in the Debtor's case, and as such are not subject to mandatory remand. 28 U.S.C. § 1334(c)(2). Those same two parties also requested that this Court abstain from adjudicating the Removed APs, which, if granted, would also result in remand to the State Courts.

Congress intended for federal courts to have broad discretion with respect to whether they should abstain from hearing actions removed from state court where such actions could have an impact on a pending bankruptcy case.[22] This Court carefully considered whether abstention and remand are appropriate with respect to the Removed APs, and has concluded they are not. Reference will again be made to this Court's decision in *In re Cook, supra*:

> An important and beneficial attribute of bankruptcy is its inclusiveness. It gathers all assets of, and claims against, a debtor within one tribunal for administration, liquidation and adjustment. 28 U.S.C. § 157(b)(2). To maintain this inclusiveness, a bankruptcy court has a duty to exercise jurisdiction in matters arising under the Code or arising in a bankruptcy case, unless the court finds abstention is in the best interest of the parties and the estate, and will not jeopardize the rights, remedies, safeguards and legitimate expectations provided under the Code to the parties in interest. In short, a bankruptcy court should be reluctant to relinquish its jurisdiction over core proceedings, unless there is a specific showing abstention will better serve the parties in interest and estate. . . .
> In the instant case, this Court will not abstain from adjudicating issues that are core proceedings. Such proceedings include the determinations of the validity, extent and priority of Welch's lien and the inseparable issue of perfection. They also include the adjudication of whether the monetary claim underlying Welch's lien should be allowed as a secured or unsecured claim, an adjudication which also requires a determination of perfection of the lien. Sections 362(b)(3) and 546(b)(2) permit Welch to take whatever steps are necessary to perfect his lien; thus this Court's refusal to abstain does not interfere with Welch's perfection of his lien, assuming it can be perfected.

384 B.R. at 296-97.

### *Conclusion and Order*

For the reasons stated above, the Court finds that, with the exception of the claims asserted

---

[22] 28 U.S.C. § 1334(c)(1) (court may abstain in interest of justice, or comity with or respect for

against the Monks, the causes of action in the Removed APs and Consolidated AP are core proceedings under 28 U.S.C. § 157(b)(2) and further finds that there are no constitutional limitations that prohibit this Article I court from exercising jurisdiction over such proceedings. Moreover, with the exception of the claims asserted against the Monks, there are no convincing grounds for abstention and remand to the State Courts. Accordingly, it is ORDERED that the motions and requests to abstain and/or remand made by Pine Apple and Construction Materials (Docs. 94, 98) are hereby DENIED.

It is further ORDERED that, inasmuch as the Monks are neither debtors nor creditors in this case, and they apparently claim no interest in the Project or other property of the estate, the causes of action asserted against them in Removed APs 10-40119, 10-40120, 10-40121 and 10-40123 are hereby remanded to the Circuit Court of Shelby County, Alabama.[23]

So done and ordered this 29th day of November 2011.

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

state court); 28 U.S.C. § 1452(b) (court may remand cause of action on any equitable ground).

[23] Some of the Subcontractors claimed one or more of the Monks had guaranteed obligations owing by Pine Apple to those Subcontractors. If those Subcontractors ultimately recover on their claims against the Monks, by virtue of subrogation the Monks may become creditors of Pine Apple. If the Monks had guaranteed the obligations of the Debtor, then an argument could be made that, because the Monks would be contingent creditors of the Debtor, the claims against them should not be remanded. See 11 U.S.C. §§ 101(5), (10)(A) (definition of "creditor" includes holder of contingent claim); § 509(a) (entity liable with debtor subrogated to extent of payment).